IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ACS/PRIMAX, as Administrator of the Crown Battery Manufacturing Employee Benefit Plan, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 07-00170 |
| v. | ) ) ) | Chief Judge Donetta W. Ambrose |
| JACOB POLAN, a minor, by and through his parents and natural guardians, JESSICA L. POLAN and KIRK S. POLAN, | ) ) ) ) | Magistrate Judge Cathy Bissoon |
| Defendants. | ) ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Plaintiff's Motion for Summary Judgment (Doc. 21) be denied and that Defendants' Motion for Summary Judgment (Doc. 22) be granted, as discussed below.

### II.    REPORT

**BACKGROUND**

    **A.    Factual Background**[1]

This is an action brought under the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA") by ACS/Primax ("ACS" or "Plaintiff"), the subrogation vendor for the Crown Battery Manufacturing Employee Benefit Plan, against Jacob Polan, a minor, to recover

---

[1] Defendants raised an issue as to Plaintiff's failure to file a Concise Statement of Material Facts, as required by Western District of Pennsylvania Local Rule 56.1(B)(1). The parties' submissions, however, reveal that they do not dispute the material facts and therefore, Plaintiff's failure to file a separate Concise Statement of Material Facts is of no consequence to the Court's disposition of this matter.

medical expenses paid for his treatment. ACS seeks to recover these amounts out of funds Jacob received through a settlement of a medical malpractice claim.

Defendant Kirk S. Polan was an employee of Crown Battery Manufacturing Company ("Crown") and a participant in the Crown Battery Manufacturing Employee Benefit Plan ("Plan") – a self-funded plan within the meaning of ERISA. See Defendants' Concise Statement of Material Facts (Doc. 24) ("Defs.' Facts") at ¶¶ 1-2. The Plan is administered by Medical Mutual of Ohio ("MMO"). Id. at ¶ 3. The Plan is a welfare benefit plan that provides to participants and their dependents, inter alia, payment for certain covered medical services. Id. at ¶ 7. During the period relevant to the parties' dispute, the Plan was amended. Id. at ¶ 5. The Plan immediately before the amendment was effective from May 1, 2000 through December 31, 2002 ("Original Plan"). Id. at ¶ 4. The amended Plan became effective on January 1, 2003 ("Amended Plan"). Id. at ¶ 5. Both the Original Plan and the Amended Plan contain clauses concerning the Plan's rights of subrogation and reimbursement, the interpretation of which are at the center of this matter.

Jacob was born on December 29, 2001, with extensive injuries apparently caused by a condition that Jacob's mother had developed while she was pregnant with Jacob and for which she had received treatment. Id. at ¶¶ 13-18. According to the Polans, the treatment she received for that condition was negligently administered and caused Jacob's birth injuries. Id. Jacob suffered severe injuries which have resulted in permanent physical and neurological damage. Id. at ¶ 18. It is expected that Jacob will need constant supervision, even in his adult life, and therefore, will never live independently. Id.

Jacob underwent (and, likely, will continue to undergo) extensive medical treatment for his injuries. Id. at ¶ 19. These treatments have caused Jacob's parents to incur significant

medical expenses. Id. As the medical expenses were for "Covered Services," as that term is defined in the Plan, the Plan directly paid the medical provider for the expenses Jacob's parents incurred from December 29, 2001 through July 24, 2003.[2] Id. In total, the Plan paid for $236,744.00 in medical expenses incurred by Jacob's parents. Id.

On September 29, 2004, over two years after he was born, Jacob, by and through his parents, initiated a medical malpractice action against the doctors and hospitals, alleging that their negligent treatment of his mother's condition caused his injuries. Id. at ¶ 20. Jacob's parents, however, were barred by the applicable statute of limitations from pursuing a claim for the medical expenses they had incurred on Jacob's behalf. Id. at ¶ 21. Ultimately, Jacob settled his medical malpractice claim for $3,000,000.00 ("Settlement"). Id. at ¶ 22. After filing a Petition for Leave to Settle Minor's Claims in the Court of Common Pleas of Allegheny County, Plaintiff, among others, claimed a lien against the Settlement. Id. at ¶ 23. In February 2007, the Court of Common Pleas approved the Settlement and further approved a deduction from that Settlement of $1,000,000.00 to represent the contingent fee payable to Polans's counsel and an additional deduction of $95,235.00 to reimburse fees incurred by Polans's counsel. Id. at ¶ 24. The state court further ordered that $350,000.00 of the Settlement be escrowed in an interest-bearing account pending resolution of the liens claimed by, among others, Plaintiff. Id. Prior to the state court approving the Settlement, on February 8, 2007, Plaintiff brought the instant action seeking a declaration that, pursuant to the terms of the Plan, it is entitled to recover the amount of

---

[2] The Plan stopped making payments in July 2003 because Kirk Polan switched employers and, therefore, was no longer covered under the Benefit Plan. Id. at ¶ 19. The parties have not raised, and the Court does not believe that there exists, any issue that Plaintiff improperly stopped providing, or otherwise denied, benefits to Kirk Polan under the Benefit Plan.

the medical expenses it paid to Kirk and Jessica Polan for Jacob's medical treatments, or the sum of $236,744.00.[3]

### B. Procedural Background

Nearly simultaneous with Plaintiff filing the present action, on February 9, 2007, the Polans filed in the Court of Common Pleas of Allegheny County a Petition for Rule to Show Cause Why Medical Expense Liens Claimed Against Minor's Settlement ("Rule to Show Cause Action") should not be ruled invalid. Id. at ¶ 26. In response to the Rule to Show Cause Action, Plaintiff filed Preliminary Objections. Id. at ¶ 27. Plaintiff then filed a Notice of Removal seeking to remove the Rule to Show Cause Action to Federal Court. Id. at ¶¶ 27, 30. After the Rule to Show Cause Action was removed, it was consolidated with the present action.[4] Id.

## ANALYSIS

### A. Which Plan Applies

The crux of the parties' dispute is whether Plaintiff is entitled to be reimbursed for the medical expenses it paid to the Polans for their minor son's medical treatments. Before reaching that issue, however, the Court first must resolve a threshold issue: which of the two Plans – the Original Plan or the Amended Plan – applies.[5] The resolution of this threshold issue will guide the Court's analysis of whether Plaintiff is entitled to be reimbursed for the medical expenses it paid for Jacob's medical treatment. The Original Plan was in effect at the time Jacob was born

---

[3] Plaintiff amended its Complaint in December 2007 to reflect that two different plans were in existence during the relevant period, i.e., the Original Plan and the Amended Plan. Id. at ¶¶ 31-32.
[4] The removed action was docketed in the United States District Court for the Western District of Pennsylvania at Civil Action No. 07-00450.
[5] Although the parties do not seem to dispute it, but because Plaintiff raised it in its Motion, the Court notes that Plaintiff's claim is proper as one seeking equitable relief under Section 502(a)(3) of ERISA. See Sereboff v. Mid-Atlantic Med. Svcs., Inc., 547 U.S. 356, 369-69 (2006) (holding that fiduciary's "action to enforce the 'Acts of Third Parties' provision [i.e., a subrogation/reimbursement provision in a welfare benefit plan] qualifies as an equitable remedy because it is indistinguishable from an action to enforce an equitable lien established by agreement . . ." and, therefore, "properly sought 'equitable relief' under § 502(a)(3) . . .").

and suffered his injuries. The Amended Plan became effective January 1, 2003. Notably, at the time the Plan was amended, Jacob was still undergoing treatment for his injuries.

Plaintiff argues that the Amended Plan governs because its right to be reimbursed did not arise, or accrue, until the Polans obtained the Settlement, which occurred in 2007. Stated differently, ACS asserts that it would not have had any right to be reimbursed until the Polans recovered "any amounts" through a "suit, claim, settlement or otherwise." (Amended Plan, attached as Ex. 5 to Doc. 25.) The Polans, on the other hand, assert that the Original Plan applies because it is the Plan that was in existence at the time the benefits provided – namely, medical expenses – were incurred and paid by the Plan.

Plaintiff does not dispute that the medical expenses were paid under the Original Plan, utilizing the standards for coverage available under that Plan. Despite this, Plaintiff asks that the terms of a different contract – the Amended Plan – apply as to its right to be reimbursed for those same medical expenses. Stated differently, Plaintiff urges this Court to apply the terms of the Amended Plan (or plan provisions that were in existence at the time the Plan's right to pursue reimbursement became actionable) and ignore the fact that those were not the provisions in existence at the time the Plan paid the medical expenses. This position lacks logical appeal and it is unsupported in the law. It is unreasonable for the coverage decision (payment of medical expenses) to have been governed by one plan or contract, i.e., the Original Plan, and the Plan's reimbursement for those medical expenses be governed by another, i.e., the Amended Plan. See Waupaca Foundry, Inc. v. Gehlhausen, 104 F. Supp. 2d 1052 (S.D. Ind. 2000).

In Waupaca, the employer sought to enforce its subrogation and reimbursement rights after it provided coverage to the participants for the medical expenses they incurred in having their minor daughter treated for birth injuries. Id. at 1054. As was the case here, the plan's

subrogation and reimbursement provisions were amended while the minor daughter continued to receive treatment for her injuries. Id. at 1054-55. On the issue of which of two plans applied to the plan's claim, the court concluded the original plan governed and appropriately reasoned:

> A plan ought not to be permitted to conscript its participants into becoming a de facto collection agency, changing the language of the plan documents such that the beneficiary's lawsuit recovers only for the plan at the beneficiary's own expense. In a case where the participant had already received benefits under an ERISA plan, the Seventh Circuit has refused to apply an amendment which was made (as here) prior to the plan's claim for subrogation and reimbursement. No principle of contract law allows a party to unilaterally modify the extent of its own rights, and the plan's amending power cannot be used 'to force plan participants and beneficiaries to return benefits already received and spent.'

Id. (citing and quoting Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells, 213 F.3d 398, 402 (7th Cir. 2000)) (citations omitted).

As Waupaca illustrates, a plan cannot garner greater rights for itself simply by amending the terms of the plan. See Member Svcs. Life Ins. Co. v. American Nat'l Bank and Trust Co. of Sapulpa, 130 F.3d 950, 954 (10th Cir. 1997) (rejecting plan's efforts to apply amendment to a plan that created for itself a right of subrogation, stating that "the medical expenses [the plan] seeks to recoup were incurred and paid, and therefore vested, before the plan was modified by the 1993 amendment. Accordingly, retroactive application of the amendment [by which the plan created a right of subrogation] in these circumstances would impermissibly destroy vested rights."); Franks v. Prudential Health Care Plan, Inc., 164 F. Supp. 2d 865, 879-80 (W.D. Tex. 2001) (applying older version of ERISA plan to determine plan's right to reimbursement, reasoning that "[a]s the plan paid the member's medical expenses under the plan in existence at the time of injury and treatment, it is reasonable to conclude this is when the plan's contractual right to reimbursement, if any, arises. . . . [The plan's] contractual right to reimbursement arose under the plan in effect at the time of his injury and when he received treatment. Common sense

also leads the Court to conclude the plan in effect at the time of service applies."). Because the medical expenses at issue here were paid under the terms of the Original Plan, Plaintiff's effort to recoup those same medical expenses is governed by the terms of the Original Plan.

The Court also is aware that a relatively small portion of the expenses ($13,640.00) were paid while the Amended Plan was in effect. The evidence before the Court does not suggest (and neither side has raised the specter) that the expenses the Polans incurred after the Amended Plan became effective were for some injury other than the subject injury. Thus, the Court has no reason to believe that the additional expenses paid while the Amended Plan was in effect were for anything other than Jacob's continuing treatment for the same injury that he indisputably sustained at the time the Original Plan was in effect. Under these circumstances, the Original Plan should govern the entirety of Plaintiff's claim, including the $13,640.00 in medical expenses that were paid after the Amended Plan became effective. See Waupaca, 104 F. Supp. 2d at 1055-57 (opting to apply the original plan to the entirety of the plan's claim, despite the fact that, as is the case here, some of the expenses were incurred after the plan was amended and noting that "[n]o principle of contract law allows a party to unilaterally modify the extent of its own rights . . . ."). Cf. Confer v. Custom Eng'g Co., 952 F.2d 41, 43 (3d Cir. 1991) (declining to apply amendment to plan that would have precluded coverage for participant's injuries and noting that the plan, as in existence at the time of the accident, would not have precluded coverage); Medina v. Time Ins. Co., 3 F. Supp. 2d 996, 1003 (S.D. Ind. 1998) ("[G]eneral principles of insurance law prohibit the insurer from rejecting the bet after it knows how the horse race ended, *i.e.*, from retroactively changing the terms of the contract to avoid coverage."). For all of the above reasons, the Court concludes that the Original Plan governs Plaintiff's entire claim to recover the medical expenses it paid for Jacob's injuries.

**B. Entitlement to Reimbursement.**

Having determined that the Original Plan applies, the Court turns to the central issue before it, specifically whether the Plan is entitled to be reimbursed for the medical expenses it paid to the Polans for Jacob's medical treatment.

It is undisputed that the Original Plan provides the Plan generally with a right of subrogation and/or reimbursement. Plaintiff invokes the following language in support of its efforts to recoup the medical expenses:

> To the extent MMO provides benefits for Covered Services, you must repay MMO amounts recovered by suit, settlement or otherwise from any person, organization or insurer.

(Defs' Ex. 4 (Doc. 25).) Significantly, this language appears in a section entitled "Subrogation." The entire provision (inclusive of the above "reimbursement" language) reads as follows:

> Subrogation
>
> If MMO provides benefits for Covered Services and you have the right to recover from another person, organization or insurer as a result of a negligent or wrongful act, MMO assumes your legal rights to any **recovery of Incurred expenses**. For purposes of this section, "insurer" shall include, but is not limited to, (1) any insurer of any third party, (2) any insurer providing uninsured or under-insured motorist coverage, and (3) your own insurer other than MMO.
>
> To the extent MMO provides benefits for Covered Services, you must repay MMO **amounts** recovered by suit, settlement or otherwise from any person, organization or insurer.
>
> You have the legal obligation to help MMO in all possible ways when MMO tries to recover **these amounts**.
>
> You must give MMO Information and assistance and sign the necessary documents to help enforce MMO's rights. You must not do anything which might limit MMO's rights.

Id. (emphasis added).

Both parties contend that the above language supports their position. The Plan asserts that the language unequivocally entitles it to be reimbursed for the medical expenses it paid because nothing in the language restricts its recovery only to medical expenses recovered. On the other hand, the Polans contend that the language requires that they first recover medical expenses – the benefit the Plan provided in this case – from a third party before the Plan is entitled to reimbursement of those expenses under the provision. As the dispute revolves around the subrogation provision in the Original Plan, the Court is tasked with interpreting that provision to determine whether the Plan is entitled to the relief it seeks under the terms of the Original Plan.

When interpreting ERISA plans, the plan should be "construed as a whole" based on general principles of contract law. Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of America, U.A.W., U.A.W. Local No. 1697 v. Skinner Engine Co., 15 F. Supp. 2d 773, 780 (W.D. Pa. 1998), aff'd, 188 F.3d 130 (3d Cir. 1999). The terms of the plan "must be given their plain meanings, meanings which comport with the interpretation given by the average person." Id. Given the complexities underlying them, ERISA plans, in particular, are to be interpreted from the perspective of the plan beneficiaries, not from the perspective of the Plan Administrator. See 29 U.S.C. § 1022 (requiring that ERISA summary plan descriptions "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan"). Thus, plans should be interpreted from the perspective of a reasonable plan participant and language used in the plan should be given its "common and ordinary meaning as a reasonable person in the position of the [plan] participant … would have understood the words to mean." McGee v. Equicor-Equitable HCA

Corp., 953 F.2d 1192, 1202 (10th Cir. 1992) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112 (1989)).

The Court, applying these principles of contract interpretation, concludes that a reasonable plan participant would read the subrogation provision of the Original Plan as precluding Plaintiff's right to recover medical expenses as a result of a lawsuit through which Jacob indisputably did not (and could not) seek – and from a monetary settlement of that lawsuit that indisputably did not include – medical expenses. The focus of the provision (of which the "reimbursement" provision is a part) is on the "recovery of Incurred expenses." In addition, the third sentence (or paragraph) of the provision refers back to "these amounts." The second paragraph, or the "reimbursement" language, must be read in the context in which it appears.

With that said, in the paragraph immediately preceding the "reimbursement" language, the language is clear that the recovery of "Incurred expenses" is the trigger for the Plan's right to "assume [the participant's] legal rights to such recovery." Under the Plan, "Incurred" is defined as "rendered to you by a Provider." (Defs' Ex. 2 (Doc. 25).) "Incurred expenses," therefore, refers to those expenses incurred for covered services "rendered to [the participant] by a Provider." Stated simply, the phrase refers to those expenses incurred for medical treatment covered under the Plan. The Court additionally believes that a reasonable plan participant reading the entire "Subrogation" provision would understand the reference to "amounts" and "these amounts" in the second and third paragraphs to refer and relate back to the phrase "Incurred expenses," which is found in the very first sentence of the provision and reflects the only other figure-based terminology in the entire provision. The Court, therefore, interprets the phrase "amounts recovered by suit, settlement or otherwise from any person, organization or

insurer" as referring to those amounts recovered by the participant for "Incurred expenses" or, in this case, medical expenses.

Plaintiff's interpretation of the Plan, e.g., that the language unequivocally entitles it to be reimbursed for the medical expenses it paid, is not supported either by the plain language of the terms of the provision or the context in which these terms appear and, therefore, is unreasonably broad. If the Plan's reading of the provision is adopted, the phrase "recovery of Incurred expenses" would be rendered meaningless, despite the fact that it is in the very first sentence of the provision. Given the fact that the "Subrogation" provision is written without any subheadings or subparts, it does not make sense for the phrase "recovery of Incurred expenses" to become meaningless in the sentences that follow, including in the sentence exclusively relied upon by Plaintiff for its right to be reimbursed for the medical expenses it paid. Essentially, the Plan would have this Court read the second paragraph of the provision in a vacuum, but well-established principles teach that the language of ERISA plans must be "construed as a whole." Therefore, the import of the phrase "recovery of Incurred expenses" in the remainder of the "Subrogation" provision cannot be ignored. As discussed below, Jacob Polan did not recover any "Incurred expenses" and, therefore, the Plan is not entitled to be reimbursed for the medical expenses it paid.

It is undisputed that Jacob Polan, through his lawsuit and subsequent Settlement, did **not** recover medical expenses. In fact, the Settlement here did not arise from a lawsuit seeking medical expenses. Rather, the lawsuit giving rise to the Settlement was initiated by the minor Jacob Polan, albeit on his behalf by his parents, who were **precluded** and **statutorily barred**

from recovering medical expenses.[6] A review of Primax Recoveries Inc. v. Carey, 247 F. Supp. 2d 337 (S.D.N.Y. 2002) is instructive.

In Primax, a plan sought to assert a lien in the amount of the medical expenses it paid on behalf of a participant for injuries she sustained in an accident. Id. at 339. Under the plan, medical expenses that were incurred as a result of the actions of a third party were subject to be repaid to the plan in the amount, inter alia, the participant "actually received from the third party for such Covered Expenses." Id. at 340. The court focused on New York's collateral source rule which "prevents [the participant] from recovering from the tortfeasors expenses that she has already recovered from a collateral source, such as medical insurance" and determined that the plan was not entitled to recovery because it could only recover "the expenses of [the participant's] medical treatment for which a third party is liable." Id. at 343. The court observed that, under the collateral source rule, no matter what the participant recovered in her third party negligence action, her recovery would be reduced by the amount of the medical expenses the plan paid and, thus, "no part of such a judgment would constitute 'Covered Expenses' recoverable by [the plan]." Id. The court approvingly noted the participant's position that the plan should only be entitled to recover that portion of the settlement funds that reflected medical expenses:

> [Defendant] claims that the Plan only entitles Primax to portions of
> a judgment or settlement paid specifically for covered expenses.

---

[6] Pennsylvania law provides that the proper action for a minor seeking recovery from alleged medical malpractice is an action to recover for future pain and suffering, not medical expenses. See Hathi v. Krewstown Park Apartments, 561 A.2d 1261, 1262 (Pa. Super. 1989) ("'Under Pennsylvania law, personal injury to a minor gives rise to two separate and distinct causes of action, one the parents' claim for medical expenses and loss of the minor's services during minority, the other the minor's claim for pain and suffering and for losses after minority.'") (quoting Olivieri v. Adams, 280 F. Supp. 428, 429 (E.D. Pa. 1968)). Because it is the minor's parents who incur, and are responsible for, medical expenses, it is the minor's parents who have standing to bring an action to recover medical expenses. Id. Notably, while ERISA broadly preempts "any and all State laws" that "relate to any employee benefit," 29 U.S.C. § 1144(a), Pennsylvania law governing the nature of medical malpractice actions does not "relate to" an ERISA plan. Therefore, ERISA does not preempt Pennsylvania common law in this context.

> The Court agrees. **An interpretation of the contract that permitted Primax to recover the benefits it had paid out of a recovery that was intended to compensate Carey for pain and suffering, for example, would be contrary to the 'background of common-sense understandings and legal principles that the parties may not have bothered to incorporate expressly but that operate as a default rules to govern in the absence of a clear expression of the parties' intent that they do not govern.'** . . . This is particularly true under New York's collateral source rule, which would first reduce the jury's verdict by the amount of covered expenses. If the tort victim then had to reimburse the insurer out of the resulting judgment, the tort victim would not be fairly compensated for her injuries. Such a result could not be countenanced **unless the Plan's contractual language was extremely explicit that the parties intended this result**.

Id. at 343 n.7 (quoting Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells, 213 F.3d 398, 402 (7th Cir. 2000)) (emphasis added).

Simply put, the Primax court believed that the nature of the recovery obtained by the participant is significant. Id. Similarly, in Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells, 213 F.3d 398 (7th Cir. 2000), the court, while addressing the separate issue of whether the plan language permitted a reduction in the plan's recovery of attorneys' fees, observed that plans ought to be read against "a background of common-sense understandings and legal principles." Id. at 402. It further observed that a literal reading of the plan (one that would preclude a reduction for attorneys' fees) would leave the participant worse off than if she had not sued in tort to recover damages which, in turn, would deter plan participants from suing in tort for injuries they sustained. Id. The court noted that such an undesirable result also would be true in the type of situation before the Court here, i.e., where the participant never even sues for the medical benefits provided under the plan:

> This would be true even if [the participant] had sought no medical benefits, or any other benefits available under the plan, in that suit – it might have been a suit purely for damages to her car. This prospect [of being worse off due to the reimbursement provision] might well deter a suit likely to result in a judgment or settlement

> not much larger than the benefits available under the plan – and in that event the language on which the plan relies would produce undercompensation for harms that were unrelated to the type of harm to which the benefits pertain. [The participant] would have been surprised to have been told when she signed onto the plan that as a result of it she might not be able to obtain compensation for tortiously inflicted property damage.

Id.

Other courts have concluded that the subrogation or reimbursement provision ought to be read narrowly to preclude a plan from recovering where the settlement or judgment proceeds were not attributable, or related, to the medical expenses paid by the plan. See Wright v. Aetna Life Ins. Co., 110 F.3d 762, 764-65 (11th Cir. 1997) (concluding that the reimbursement provision which required the participant to pay "up to the amount of the benefits received under this Plan . . . if damages are collected . . ." ambiguous and finding that the reimbursement provision, when read in conjunction with a more specific reimbursement agreement, provides that the plan is entitled to be reimbursed only "'to the extent the net amount' of her settlement is attributable to medical expenses"); Cooper Tire & Rubber Co. v. St. Paul Fire and Marine Ins. Co., 48 F.3d 365, 371-72 (8th Cir. 1995) (finding company's interpretation of subrogation provision through which company sought to be reimbursed for medical expenses "to be contrary to the plain language of the Plan. [The employer's] subrogation rights are expressly limited to [the participant's] right to recovery of medical expenses. Per the language of the Plan, [the employer] 'succeeds' only to rights of recovery an employee or dependent may have '*with respect to*' services or drugs covered by the Plan.") (emphasis in original); Janssen v. Minneapolis Auto Dealers Benefit Fund, No. 04-3463, 2004 WL 3019792, at *6-8 (D. Minn. Dec. 30, 2004) (in action where plan sought to recover medical expenses it paid for a minor's surgical procedures from a settlement of an underlying medical malpractice suit, court determined that plan was not entitled to a recovery, concluding that Fund's interpretation was

"unreasonable" as "[i]t is undisputed the Janssens had no right of recovery of medical expenses at trial [because such a claim was time-barred]. Therefore, the Plan cannot claim an interest greater than that available to the Janssens."), aff'd, 447 F.3d 1109 (8th Cir. 2006); Hamanne v. Central States, Southeast and Southwest Areas Health and Welfare Fund, 11 F. Supp. 2d 1065, 1069-70 (D. Minn. 1998) (finding that plan had no right to be reimbursed for medical expenses it paid related to a specific condition because participant neither pursued nor recovered any expenses related to that condition at trial and observing that "the issue is whether [the plan] is entitled to subrogation claim that goes beyond what medical expenses the Hamannes recovered at trial. Under basic subrogation principles, [the plan's] subrogation claim is unreasonable because it is stepping outside the shoes of the beneficiary and asserting rights of recovery greater than what the Hamannes recovered at trial.").

Despite acknowledging that the Settlement did not include a recovery for medical expenses, Plaintiff argues that the Plan provisions ought to be construed broadly to allow the Plan to be reimbursed from **any recovery** a participant obtains, including one that is not for the medical expenses it paid. The Court disagrees.

The Court notes the absence from the "Subrogation" provision of such words as "any" or "all," as well as any indication that the Plan intended to grant itself the "first right to recovery" or a priority over the funds obtained by a third party. Though seemingly insignificant, the absence of such terms as "any," "all," or similarly inclusive terminology is telling. The Court of Appeals for the Third Circuit, albeit in a different context, has observed the import of the terms "any" and "all" by noting that "the words 'any' and 'all' both mean 'the whole of' or 'every'" and evince a "universal scope." Bollman Hat Company v. Root, 112 F.3d 113, 116-17 (3d Cir. 1997) (quoting Black's Law Dictionary 74, 94 (6th ed. 1990)) (finding that plan was entitled to full

reimbursement and that participant was not entitled to reduce attorneys fees from the money owed to the plan from a third party recovery because the plan unambiguously required "reimbursement of 'any payments' made by the [p]lan to a participant, and provide[d] for subrogation to 'all [of the participant's] rights of recovery.'")[7]; see also Walker v. Wal-Mart Stores, Inc., 27 F. Supp. 2d 699, 705 (S.D. Miss. 1998) (opining on the significance of the terms and explaining that the "'any and all' language plainly means the first dollar of recovery (any) and 100% recovery (all) funds received by [the] plaintiff in settlement"), aff'd, 159 F.3d 938 (5th Cir. 1998).

Thus, in those instances in which courts have permitted the plan to recover medical expenses, the language the plan invoked to do so included explicit, all-inclusive language which made it unequivocally clear that **any** payments that the insured received – no matter the source or the nature of such payments – would be subject to the reimbursement provision. Moreover, in these same cases, the language – unlike that here – explicitly required a connection, or relationship, between the payments received and the injury, even if such payments were not for medical expenses. See Walker, 27 F. Supp. 2d at 705-06 (allowing reimbursement based on language that provided that "**Any payments** resulting from a judgment or settlement, or other payment or payments, made or to be made **by any person or persons considered responsible for the condition giving rise to the medical expense** or by their issuers, regardless of whether

---

[7] It should be noted that, despite addressing plan interpretation issues, the Court of Appeals for the Third Circuit in Bollman Hat Company did not address the key issue here of whether a plan is entitled to reimbursement where the participant did not recover from a third party the very benefit that the plan paid. Unlike in the instant case, in Bollman Hat Company, the participant complied with the employer's request for reimbursement, but withheld a portion of the funds "to pay a portion of the attorney's fees and costs incurred in obtaining the third party settlement." Bollman Hat Co., 112 F.2d at 114-15. The issue between the parties focused on the withheld portion of the funds. Thus, the specific issue before the court in Bollman Hat Company was "whether a plan must contribute to the legal expenses of a plan participant's recovery against a third party." Id. at 114. This also was the scenario and issue before the Court of Appeals for the Third Circuit in Ryan by Capria-Ryan v. Federal Express Corporation, 78 F.3d 123 (3d Cir. 1996). For this reason, the Court believes that Bollman Hat Company and Ryan are inapposite and do not guide the analysis of the salient issue before it here.

the payment is designated as payment for such damages, including, but not limited to pain and/or suffering, loss of income, medical benefits or any other specified damages; or any other damages made or to be made by any person . . .") (emphasis added); Rhodes, Inc. v. Morrow, 937 F. Supp. 1202, 1210-13 (M.D.N.C. 1996) (allowing reimbursement of medical expenses based on language that provided that insurer was entitled to reimbursement "out of **any recovery** by settlement, judgment, or otherwise, from **any person organization [sic] responsible [for the subject injury]**, or from such person's organization's insurance") (emphasis added); Singleton v. Board of Trustees of IBEW Local 613, 830 F. Supp. 630, 631-32 (N.D. Ga. 1993) (under reimbursement agreement, insured agreed to "reimburse the Fund for the payment of said benefits to the extent I receive **any payments** from **any party**, person, firm or corporation, private or public, **relating to its liability or a settlement of its liability for the injury, sickness, accident or condition to which this payment of benefits relates**.") (emphasis added). These cases thus illustrate that "[w]here the subrogation clause of a plan states that it covers **all rights of recovery**, a defendant cannot defeat the plain language by designating in the settlement, that the recovery precludes medical damages. In fact, 'the designation of these funds (or lack thereof) is simply irrelevant' where the subrogation clause includes **all rights to recovery**." G.R. Herberger's, Inc. v. Erickson, 17 F. Supp. 2d 932, 936 (D. Minn. 1998) (emphasis added).

In the case at bar, the language at issue neither includes explicit, broad terms such as "all rights of recovery," "any payments" or "any recovery," nor specifies that there even be a relationship between the payments received and the injury for which the medical expenses were paid in the first instance. To reach the conclusion Plaintiff seeks, the Court would have to add these terms into the provision and presume that this is what the Plan intended. The Court, however, is loath to rewrite the provision and add conspicuously absent terms to it simply to

achieve the result the Plan now seeks. See Walker, 27 F. Supp. 2d at 705-06 (rejecting argument that provision allowed for a reduction of attorney fee and costs, noting that "[t]o allow such, this court would have to write in that provision, a circumstance clearly forbidden by the jurisprudence of ERISA."). Quite simply, if the Plan had wanted to clarify that it is entitled to be reimbursed from **any** type of recovery obtained by the participant or beneficiaries, it could have done so. See Primax Recoveries Inc., 247 F. Supp. 2d at 343 n.7 (stating that "[a]n insurer can contract for recovery on *any* payment received by the insured in subsequent litigation," but that to contract in this way, the plan language ought to be "extremely explicit that the parties intended this result.") (emphasis in original).[8] This Plan did not include such broad language permitting a reasonable plan participant to believe that any recovery he or she obtains – no matter its nature – would need to be paid to the Plan.

In summary, in his medical malpractice lawsuit, Jacob Polan did not seek to recover the medical expenses the Plan paid on his behalf for his injuries and treatment. Jacob's parents, Kirk and Jessica Polan, did not seek to recover the medical expenses they incurred for Jacob's injuries and treatment.[9] Thus, the Settlement reached by the parties in the underlying medical

---

[8] As the language of the Amended Plan demonstrates, the subrogation provision in the plan was specifically modified seemingly in an effort accomplish this very result. In the Amended Plan, not only is the language modified to provide for two distinct provisions governing subrogation and reimbursement, but the language also is modified to include a parenthetical that attempts to make clear that the manner in which the recovery is "designated" is irrelevant. The Court renders no opinion on whether the Plan would be entitled to a recovery under the Amended Plan, but does note that the fact remains that the settlement recovery obtained by Jacob Polan did not include medical expenses.

[9] The Court additionally notes that the factual circumstances of this case do not give rise to concerns that the Polans have obtained a "double recovery" or have otherwise been unjustly enriched by not only having expenses paid by the insurer, but also by a third party tortfeasor. See U.S. Healthcare, Inc. v. O'Brien, 868 F. Supp. 607, 613-14 (S.D.N.Y. 1994) ("If the settlement did not include recovery of medical expenses, there would be no double recovery by the O'Briens for their health care expenses, and thus no unjust enrichment."). This is not a case in which, for example, there is any evidence to suggest that the Polans engaged in some wily scheme to craft the Settlement to re-characterize the recovery as one for pain and suffering so as to avoid reimbursing the Plan for the medical expenses it paid. Plaintiff has not argued, nor has it suggested, any such foul play. Cf. G.R. Herberger's, Inc., 17 F. Supp. 2d at 936 (allowing plan to recover medical expenses even though settlement purportedly did not include a recovery or designation of medical expenses, stating that "federal common law will protect the Plan and deny an unjust enrichment to a party whose attorneys use lexicological legerdemain to avoid ERISA Plan reimbursement").

malpractice action – which lawsuit was brought on Jacob's behalf and not by Kirk and Jessica Polan in their own right – indisputably did not include any payments for the medical benefits paid by the Plan. Like the hypothetical participant who sued for damages to her car in <u>Wal-Mart Stores</u>, 213 F.3d at 402, if the Plan's position is adopted, Jacob Polan could not have expected to be deprived of the compensation that he recovered for **his** pain and suffering to fulfill his parents' reimbursement obligations under the Plan. The Court is obliged to interpret the plain meaning of the terms and read those terms against "a background of common-sense understandings and legal principles." <u>Wal-Mart Stores</u>, 213 F.3d at 402; <u>see also</u> <u>Skinner Engine</u>, 15 F. Supp. 2d at 780. Based on the language of the Original Plan and given the specific circumstances in this case, the Court concludes that Plaintiff cannot avail itself of the provisions of the Original Plan to recover reimbursement for medical expenses from Jacob's Settlement.

**CONCLUSION**

For all of the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 21) should be denied, and Defendants' Motion for Summary Judgment (Doc. 22) should be granted.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by November 24, 2008. Responses to objections are due by December 8, 2008.

s/ Cathy Bissoon<br>
Cathy Bissoon<br>
U.S. Magistrate Judge

November 7, 2008

cc (via email):

Michael J. Laffey, Esq.
David Fawcett, Esq.
Brendan Stuhan, Esq.